UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

HARLEY FERCH,

Plaintiff,

v.

FEDERAL MEDICAL CENTER, et al.,
CONSTANCE REESE, Warden,
Dr. RUTH WESTRICK, M.D.,
JULIE ARENS, Counselor,
JULIE MILLER, Case Manager,
T.J. NELSON, Counselor,
U. BOCANEGRA, M.D.
M.T. CUOMO, Unit Manager,
KEN STEWART, LICSW, and
JEFF SACKETT, F.S.A.,

Defendants.

Civil File No. 00-2300 (JMR/AJB)

**REPORT AND RECOMMENDATION**

The Plaintiff in this action, an inmate at the Federal Medical Center in Rochester, Minnesota, ("FMC-Rochester"), is claiming that Defendants have violated his federal constitutional rights by compelling him to work in the prison's kitchen. Defendants have filed a motion to dismiss this action pursuant to Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure, (Docket No. 27), and Plaintiff has filed two oppositions to that motion, (Docket Nos. 32 and 35). The matter has been referred to the undersigned Magistrate Judge of the District Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it will be recommended that Defendants' motion be granted, and that this action be DISMISSED WITH PREJUDICE.

MAR 27 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. BACKGROUND[1]

On March 21, 1996, Plaintiff was indicted in the U.S. District Court for the Northern District of Florida for mailing threatening communications to various court personnel working in the U.S. District Court for the Middle District of Florida. He was later committed to the custody of the Attorney General for the purpose of determining whether he was competent to stand trial. See 18 U.S.C. § 4241(a) and (b). In December 1996, the trial court reviewed a competency report that had been prepared at FMC-Rochester, and concluded that Plaintiff was incompetent to proceed to trial because he was suffering from a mental disease. The court then re-committed Plaintiff to the Attorney General pursuant to 18 U.S.C. § 4241(d), for hospitalization, and to determine whether Plaintiff might become competent to go to trial after receiving treatment for his mental illness. (Def. Exh. p. 29.[2])

After reviewing several medical reports, the trial court ultimately concluded that Plaintiff probably would not become competent to proceed to trial in the foreseeable future. The court therefore ordered the Attorney General to consider whether commitment proceedings should be brought against Plaintiff under 18 U.S.C. § 4246 – the statute that authorizes federal confinement of an individual who has been accused or convicted of a federal crime, and is found to be "suffering from a mental disease or defect as a result of

---

[1] The Court's summary of the historical background of this case is based primarily on Defendants' submissions in support of their motion for summary judgment. (Docket Nos. 28 and 29.) Although Plaintiff vigorously disagrees with Defendants' legal arguments, he has not offered any meaningful challenge to Defendants' presentation of the relevant facts.

[2] Defendants' evidentiary submissions are attached as exhibits to their memorandum in support of their motion for summary judgment. (Docket No. 28.) Defendants' exhibits are paginated 1 through 187, (the page numbers appear in the upper right hand corner of each page), and they will be cited herein as "Def. Exh. p. ___."

which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." (Def. Exh. pp. 22-23.)

Thereafter, the Attorney General did initiate a § 4246 commitment proceeding, which was heard and decided in the Western District of Missouri. (The § 4246 proceeding apparently was conducted in that district, because Plaintiff was then being held at the Federal Medical Center in Springfield, Missouri.) After still more examinations and reports, the Missouri district court concluded, based on "the unanimous expert opinion," that Plaintiff "suffers from a mental disease or defect and that his unconditional release would create a substantial risk of bodily injury to another person or serious damage to the property of another." Therefore, on October 27, 1999, Plaintiff was committed to the custody of the Attorney General for an indefinite term, pursuant to § 4246. (Def. Exh. pp. 19-20.)

When a person is committed under § 4246, the Attorney General must first attempt to turn the person over to an appropriate state institution, if a state "will assume responsibility for his custody, care and treatment." 18 U.S.C. § 4246(d). If no state will assume that responsibility, the Attorney General is required to "hospitalize the person for treatment." Id. The Attorney General must continue to hospitalize and treat the person for his mental disease or defect until either a state government agrees to take on that responsibility, or the person is no longer likely to cause bodily injury or property damage to others. Id. Since October 27, 1999, Plaintiff has been confined, hospitalized and treated by the federal Bureau of Prisons ("BOP") -- an agency of the Attorney General's Office -- pursuant to § 4246.

The BOP apparently did not give Plaintiff any formal work assignments during the time that he was being held strictly as a pre-trial detainee pursuant to § 4241. (Def. Exh.

142.) However, sometime after the initiation of his § 4246 commitment proceedings, Plaintiff started working in the laundry department at the Federal Medical Center in Springfield. He put prisoners' clothing, bedding, tablecloths, smocks, etc., into the washers and dryers, and he folded those items after they had been washed and dried. (Def. Exh. 143.) Plaintiff was paid for his work, although he presumably received a very nominal wage.

On May 4, 2000, Plaintiff was transferred to FMC-Rochester, and on June 8, 2000, he started working in that institution's food service department. The work done by the food service department is considered to be a "communal" activity. Inmates work together preparing meals and maintaining sanitation for the institution. They do not provide goods or services for others outside of the institution. Plaintiff normally worked about 20 to 30 hours per week at FMC-Rochester. He was paid $0.12 per hour, and, generally speaking, he received good job performance reviews. (Def. Exh. 143-46.) He continued to work at his food service job, with some interruptions, until April 10, 2001. On that date, Plaintiff was removed from his work assignment, pending the outcome of his current litigation. (Def. Exh. 147.)

Soon after Plaintiff started working at FMC-Rochester, he began to complain about his job assignment. He apparently wanted to be an orderly, rather than a food service worker, (Def. Exh. 127), because he did not "like wearing [the] white clothing" that food service workers are required to wear. (Def. Exh. 117.) Plaintiff continued to pursue his job assignment complaints through the BOP administrative remedy process, but he was never granted any relief.

After exhausting his available administrative remedies,[3] Plaintiff filed his present lawsuit, in which he claims that he has been forced to work at FMC-Rochester in violation of the Thirteenth Amendment's prohibition against "involuntary servitude." He is suing "Federal Medical Center, et al.," and nine individuals employed at FMC-Rochester. One of the individual Defendants is Constance Reese, the Warden at FMC-Rochester. She apparently is being sued because she is (presumably) the person who is ultimately responsible for the prison's work assignment practices and policies. Another individual Defendant is Julie Arens, who is the "correctional counselor" who allegedly assigned Plaintiff to work in the food service department. Plaintiff has not explained what (if any) role the other seven named Defendants may have played in the events giving rise to his lawsuit. He alleges only that they "conspired together" to make him work against his will.

Plaintiff's claims are brought under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), which allows citizens to sue federal agents who violate their constitutional rights. He is seeking compensatory and punitive damages for alleged violations of his rights under the Thirteenth Amendment. He is also seeking a declaratory judgment and permanent injunction that would ban all work assignments for "unconvicted prisoners" detained pursuant to 18 U.S.C. § 4246, "unless they sign a waiver of their right not to work." (Plaintiff's Amended Complaint,[4] p. (7).)

---

[3] Defendants acknowledge that Plaintiff has satisfied the exhaustion of administrative remedies requirement prescribed by 42 U.S.C. § 1997e(a).

[4] On August 14, 2001, (more than four months after Defendants' filed their present motion to dismiss or for summary judgment), Plaintiff submitted an Amended Complaint. (Docket No. 39.) The Court directed the Clerk to accept and file the Amended Complaint, (see order dated August 14, 2001; [Docket No. 38]), even though Plaintiff had not been given leave to amend as required by Fed. R. Civ. P. 15(a). See also Local Rule 15.1. The

## II. STANDARD OF REVIEW

As previously noted, Defendants' current motion has been presented as a motion to dismiss or, in the alternative, for summary judgment. A motion to dismiss may be made for "failure to state a claim upon which relief can be granted" and requires the court to review only the pleadings to determine whether the plaintiff has a viable claim. See Fed. R. Civ. P. 12(b)(6). However, when "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Id.; see also Buck v. F.D.I.C., 75 F.3d 1285, 1288 & n.3 (8th Cir. 1996). In this case, evidence from outside the pleadings has been submitted, and has been considered by the Court. Defendants' motion must therefore be treated as a summary judgment motion.[5]

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party has the initial responsibility of demonstrating that there is no genuine issue

---

Court invited Defendants to respond to the Amended Complaint, and they did so. Defendants' response indicates, in effect, that as far as they are concerned, all of the arguments and defenses raised in their pending motion are fully applicable to Plaintiff's amended pleading, and that no additional response should be necessary. ("Response to Amended Complaint;" [Docket No. 40].) Thus, it is Plaintiff's Amended Complaint that is now before the Court, and which Defendants are now seeking to have dismissed.

[5] Defendants' motion, on its face, fairly advised Plaintiff that they were seeking summary judgment, and the motion obviously relies on matters outside of the pleadings. (Indeed, Defendants' evidentiary submissions were attached directly to their memorandum in support of the motion, [Docket No. 28].) It is evident, moreover, that Plaintiff has recognized that Defendants' motion includes a request for summary judgment, because his opposition expressly refers to the "Motion To Dismiss or in alternative Motion For Summary Judgment filed by the Defendants." (Docket No. 32.) It is therefore entirely proper to treat Defendants' pending motion as a summary judgment motion.

of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56 (c), the burden shifts to the party opposing the motion to put forth evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to the material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586, n.11; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Fed. R. Civ. P. 56 (e). Pro se pleadings should be given a liberal construction and held to a less stringent standard than attorney drafted pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the plaintiff still must present evidence to defeat a properly supported summary judgment motion and may not rely upon conclusory allegations and unsupported assertions. Dunavant v. Moore, 907 F.2d 77, 80 (8th Cir. 1990).

## III. DISCUSSION

### A. Applicable Legal Standards

The first section of the Thirteenth Amendment to the Constitution says that "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." The Thirteenth Amendment expressly allows forced labor as a form of punishment for convicted prisoners. See Ray v. Mabry, 556 F.2d 881, 882 (8th Cir. 1977) (per curiam)("[c]ompelling prison inmates to work does not contravene the Thirteenth

Amendment). However, the Thirteenth Amendment's applicability to unconvicted detainees, such as Plaintiff here, is not so readily apparent.

Individuals who are held in custody as pre-trial detainees "are presumed innocent and may not be punished" without due process. Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992), cert. denied, 507 U.S. 1009 (1993), citing Bell v. Wolfish, 441 U.S. 520, 535 (1979). Our Court of Appeals held in Martinez that "[r]equiring a pretrial detainee to work or [else] be placed in administrative segregation is punishment." 977 F.2d at 423. Although Martinez involved a due process claim, rather than an involuntary servitude claim, it is probably safe to say that work-as-punishment for pre-trial detainees is generally proscribed by the Thirteenth Amendment, as well as the due process clauses of the Fifth and Fourteenth Amendments. See Bijeol v. Nelson, 579 F.2d 423, 425 (7th Cir. 1978) (addressing pre-trial detainee's due process and involuntary servitude claims together); Hause v. Vaught, 993 F.2d 1079, 1085 (4th Cir. 1993) (same), cert. denied, 510 U.S. 1049 (1994).[6]

Plaintiff, however, is not a true pre-trial detainee, because he is not presently being confined to ensure his presence at an upcoming trial to determine his guilt or innocence. His case has already been fully heard and decided under § 4246, and he is now being held in federal custody because he has been formally adjudicated to be suffering from a mental disease or defect that makes him a danger to society. Plaintiff may be entitled to a

---

[6] The instant Plaintiff has clearly indicated that his current claims are based solely on the Thirteenth Amendment, so no specific due process analyses will be conducted here. It should be noted, however, that the Court has found no reason to believe that Plaintiff's claims would be more likely to succeed if he had relied on the due process clause, rather than (or in addition to) the Thirteenth Amendment.

presumption of innocence with regard to the federal criminal charges filed against him, but his legal status as a § 4246 detainee is certainly different from that of a normal pre-trial detainee who is simply waiting for his criminal trial to begin. Given Plaintiff's § 4246 adjudication, the Court finds that his current status is more akin to that of person who is confined pursuant to a traditional state-law civil commitment proceeding.[7]

There is little case law discussing the Thirteenth Amendment rights of civilly committed persons. Plaintiff relies (almost exclusively) on Johnston v. Ciccone, 260 F.Supp. 553 (M.D.Mo. 1966), which was a habeas corpus action brought by a § 4246 detainee. In Johnston, the petitioner claimed (apparently in a purely conclusory fashion) that he was "being required to proform [sic] involentory [sic] servitude although he ha[d] never been convicted of a crime." Id. at 555. Although the petitioner's other three claims were summarily dismissed, the court decided not to dismiss the involuntary servitude claim without "further investigation." Id. at 556. "Assuming that petitioner 'has never been convicted of a crime'," the court said, "if petitioner is being forced to work at the Medical Center [in Springfield] his constitutional rights [under the Thirteenth Amendment] are being violated." Id. The court offered no explanation for this broad assertion that § 4246 detainees cannot be required to do any work.[8]

---

[7] If anything, it could be argued that the rights of § 4246 detainees are inferior to those of individuals who have been civilly committed under state law, because of the quasi-criminal nature of § 4246 proceedings. A § 4246 proceeding can be brought only against a person who has been formally charged with, or convicted of, a federal criminal offense, while state civil commitment proceedings may be brought against a person who is simply unable to care for himself. See e.g., Minn.Stat. § 253B.09, subd. 1, and § 253B.02, subd. 2, 13, and 14.

[8] The petitioner was not granted any immediate relief on his involuntary servitude claim; the court merely directed the government to file a response to his habeas petition.

It is not at all clear that the court in Johnston truly believed that the Thirteenth Amendment means, unqualifiedly and unconditionally, that civilly committed detainees can never be required to do any work, of any kind, under any circumstances. If that is what the court meant, that interpretation of the Thirteenth Amendment will not be followed here.

This Court finds a more complete and well-reasoned explanation of the Thirteenth Amendment's applicability to civilly committed detainees in Jobson v. Henne, 355 F.2d 129 (2d Cir. 1966). That case involved a man who spent most of his life after the age of twelve in the New York State Newark State School for Mental Defectives. He brought a lawsuit under 42 U.S.C. § 1983 against three directors of that institution, claiming that they violated his Thirteenth Amendment rights by forcing him to work. He alleged that "for long periods of time he was forced to work in the [institution's] boiler house eight hours a night, six nights a week, while working eight hours a day at assigned jobs in the village of Newark." Id. at 132.

The Second Circuit's discussion of the Thirteenth Amendment is directly relevant to the issues presented in this case, and it is worth repeating at length here:

> "We assume that even though the purpose of the Thirteenth Amendment was to proscribe conditions of 'enforced compulsory service of one to another,' Hodges v. United States, 203 U.S. 1, 16... (1906), the states are not thereby foreclosed from requiring that a lawfully committed inmate perform without compensation certain chores designed to reduce the financial burden placed on a state by its program of treatment for the mentally retarded, if the chores are reasonably related to a therapeutic program, or if not directly so related, chores of a normal housekeeping type and kind. [Footnote omitted.] Proceeding on this assumption it would seem to follow that those in control of institutions for the mentally retarded may subject inmates to a wide variety of programs with both therapeutic and cost saving purposes without violating the Thirteenth Amendment. [Footnote omitted.] Nevertheless, there may be some mandatory programs so ruthless in the amount of work demanded, and in the conditions under which the work must be performed, and thus so devoid of therapeutic purpose, that a court justifiably could conclude that the

inmate had been subjected to involuntary servitude."

Id. at 131-32.

In a separate footnote discussion, the Court of Appeals further explained that:

> "[M]any states do administer programs that are designed to supply institutional needs as well as provide therapy,... [citation omitted], and we assume that mental institutions can constitutionally require inmate participation in these programs to the extent that the programs have a therapeutic purpose, or are reasonably related to the inmate's housekeeping or personal hygienic needs. Therefore, whether an institution's required program in any given case constitutes involuntary servitude would seem to depend on the nature of the tasks that are required of the inmate. If a court can conclude that the chores are reasonably related to a therapeutic program or to the inmate's personal needs, the fact that the performance of the chores also assists in defraying the operating costs of the institution should not constitute involuntary servitude, even if inmates are required to engage in this activity. On the other hand, it would seem that the Thirteenth Amendment may be violated if a mental institution requires inmates to perform chores which have no therapeutic purpose or are not personally related, but are required to be performed solely in order to assist in the defraying of institutional costs, and it would appear that this would be so even if the inmates were compensated for their labor, for the mere payment of a compensation, unless the receipt of the compensation induces consent to the performance of the work, cannot serve to justify forced labor.... [Citation omitted.]

Id. at 132, n. 3 (emphasis added).

The Court finds the Jobson explication of the Thirteenth Amendment to be sound and sensible. Unlike Johnston, Jobson recognizes that the Thirteenth Amendment does not establish a blanket prohibition against all forms of compulsory labor by detainees who have not been convicted of a crime. Instead, Jobson suggests, courts must consider a number of factors when an unconvicted detainee claims a violation of his Thirteenth Amendment rights.

First and foremost, the court must consider the fundamental purpose of the work requirement. If an unconvicted detainee is compelled to work strictly as punishment, then

he probably would have a viable Thirteenth Amendment claim. However, if a work requirement has a therapeutic purpose, rather than a punitive or disciplinary purpose, then it should normally withstand a Thirteenth Amendment challenge.

Courts should also consider the nature of the work that the detainee is being required to perform. If he is being forced to work in some money-making activity for someone else's benefit, his Thirteenth Amendment claim would be more likely to succeed. If, on the other hand, he is merely being required to assume some responsibility for his own care and maintenance – e.g., cooking, cleaning or other housekeeping responsibilities – he probably would not have a viable Thirteenth Amendment claim. See Channer v. Hall, 112 F.3d 214, 219 (5th Cir. 1997) (holding that "the federal government is entitled to require a communal contribution by an INS detainee in the form of housekeeping tasks, and that [the plaintiff's] kitchen service, for which he was paid, did not violate the Thirteenth Amendment's prohibition against involuntary servitude"); Ford v. Nassau County Executive, 41 F.Supp.2d 392, 401 (E.D.N.Y. 1999) (concluding that a state pre-trial detainee could not sustain a Thirteenth Amendment claim based on allegations that he "could be called upon at any time to help distribute food" in the institution where he was confined).

Jobson further suggests that working conditions, and the number of hours worked, are also relevant considerations. Twenty hours per week of folding laundry is not the same as sixty hours per week of shoveling coal. See Bijeol, 579 F.2d at 424-25 (rejecting pre-trial detainee's Thirteenth Amendment claim based on allegations that he was compelled to perform simple housekeeping tasks that were not shown to be "overly burdensome in the time or labor required"). Compensation may also be a relevant factor. It would seem that a detainee might gain more self-esteem from his work, and that his work might

therefore be more likely to have some therapeutic value, if he were being paid for his efforts.[9]

B. Application of the Law

Having determined that the Jobson factors provide the proper framework for evaluating the Thirteenth Amendment claims of unconvicted detainees, the Court must now apply those factors to the undisputed facts of this case.

As previously mentioned, § 4246 specifically requires the Attorney General to treat Plaintiff's mental illness, not just confine him. Defendants contend that Plaintiff's work assignment is part of his treatment, and that it serves a therapeutic purpose. The therapeutic value of Plaintiff's work assignment has been explained by Defendant Ruth Westrick, the "Associate Warden of Mental Health" at FMC-Rochester, as follows:

> "Participating in talk therapy, medication therapy, recreation and work assignments provides an outlet for a patient/inmate suffering from a mental disorder, and eliminates idleness which frequently can lead to further deterioration of the patient/inmate's mental health. A patient/inmate who is participating in a structured work assignment provides the inmate with an opportunity to develop occupational skills, a sense of purpose and responsibility, as well as stimulating a productive life, which can provide indications of the patient's ability to function in society. The ability to earn money and to properly handle financial responsibilities is also an indication of the ability to function in society. Such participation in a work assignment can also illuminate difficulties a patient/inmate is having in adjusting to normal day-to-day responsibilities, and whether the patient/inmate is responding to the therapy procedures being provided to him or her."

(Def. Exh. p. 138.) The Court accepts this explanation of Plaintiff's work assignment, and finds that its fundamental objective is therapeutic – not punitive.

---

[9] The Court does not mean to suggest, of course, that compensation alone will negate a Thirteenth Amendment claim.

It is also significant that Plaintiff's work assignments have been in the food service department at FMC-Rochester. His work has been a "communal" activity that directly serves himself and other inmates. His work allows him to contribute to his own care and maintenance; it is not done solely for the benefit of someone else.

The Court further notes that Plaintiff's work responsibilities cannot be described as onerous or burdensome. He apparently has been required to work only twenty to thirty hours per week, and there is no indication that he has been required to perform any particularly demanding or unpleasant tasks. Furthermore, while his wages have been nominal, he has earned at least some compensation for his efforts, which, as Defendant Westrick has suggested, adds to the therapeutic value of his work.

Applying the Jobson criteria to the facts of this case, the Court concludes, as a matter of law, that Plaintiff's Thirteenth Amendment rights have not been violated. The undisputed facts of record clearly indicate that Plaintiff's work assignments at FMC-Rochester have been -- and apparently will continue to be -- fundamentally therapeutic, rather than punitive. He has been required only to make a contribution to his own subsistence; his work has not been unduly burdensome; and he has been paid (albeit modestly) for his efforts. Thus, the Court concludes that Plaintiff cannot sustain his Bivens Thirteenth Amendment claim, and that Defendants are entitled to summary judgment in this matter.[10]

---

[10] Because Plaintiff has no viable Bivens claim, there is no need to address Defendants' contentions that (a) Plaintiff has not adequately identified any specific acts or omissions by the individual named Defendants that allegedly violated his constitutional rights; (b) Plaintiff's claims against Defendants Reese and Westrick are non-actionable because they are based exclusively on the doctrine of respondeat superior, which is not applicable in civil rights actions; and (c) Defendants are entitled to qualified immunity. (It

## V. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion To Dismiss Or In The Alternative For Summary Judgment, (Docket No. 27), be GRANTED; and

2. This action be dismissed with prejudice.

Dated: March 26th, 2002

ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

is worth noting, however, that if Plaintiff had a viable Thirteenth Amendment cause of action, Defendants' qualified immunity defense might not protect them from official capacity claims for purely prospective relief. See Grantham v. Trickey, 21 F.3d 289, 295 (8th Cir. 1994) ("[t]here is no dispute that qualified immunity does not apply to claims for equitable relief").)